UNITED STATES *v.* C. I. PENN (No. 4261)[1]

[1] C. A. D. 93.

United States Court of Customs and Patent Appeals, January 4, 1940

*Webster J. Oliver*, Assistant Attorney.General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*Puckhafer, Rode & Rode* (*George J. Puckhafer* of counsel) for appellee.

[Oral argument December 6, 1939, by Mr. Oliver and Mr. Puckhafer]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the dutiable classification of certain merchandise consisting of cocoa fiber mats imported at the port of New York under the Tariff Act of 1930. The collector assessed duty thereon at the rate of 12 cents per square foot under the provisions of paragraph 1022 of said act for "pile mats and floor coverings, wholly or in chief value of cocoa fiber," and a proclamation of the President of the United States (T. D. 46047, 62 Treas. Dec. 671) issued under the provisions of section 336 of said tariff act, increasing the duty upon such mats from 8 cents per square foot as originally enacted in said paragraph 1022 to 12 cents per square foot.

Appellee filed four protests against such classification and assessment with duty, claiming the merchandise to be dutiable at the rate of 90 per centum ad valorem under the provisions of paragraph 1529 of said act. Alternate claims were made in the protests, which claims were abandoned on the trial before the Customs Court.

The involved paragraphs of said tariff act, in so far as the provisions thereof are here pertinent, read as follows:

PAR. 1022. * * * pile mats and floor coverings, wholly or in chief value of cocoa fiber or rattan, 8 cents per square foot.

PAR. 1529. (a) * * * braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine; * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem. * * *

It will be observed that paragraph 1022 is not one of the paragraphs expressly excluded from the application of the provisions of paragraph 1529 (a).

The Presidential proclamation, T. D. 46047, *supra*, proclaimed an increase in the rate of duty expressly fixed in paragraph 1022 on "pile mats and floor coverings, wholly or in chief value of cocoa fiber"

from 8 to 12 cents per square foot. In said proclamation no reference is made to paragraph 1529.

Before the Customs Court the protests were consolidated for the purposes of trial. Upon the trial both parties introduced testimony, and samples of the involved merchandise were introduced in evidence.

The principal issues before the Customs Court were whether the material around the edges of the mats is in fact a braid made by hand or on a braiding machine, and whether the mats with the so-called braided binding are composed wholly or in chief value of filaments, yarns or threads.

The trial court held that the mats designated on the invoices as qualities CL, CK, CB, CLB, BLB, LB, SCL, Granite #19, MB, SMB, Inlaid, and MB Inlaid were dutiable under paragraph 1529 (a) and sustained the claims of the protests as to such merchandise. It overruled the protests as to all other merchandise embraced therein.

Judgment was entered accordingly, and from such judgment this appeal was taken.

In arriving at its conclusion the trial court stated:

On the facts and the law herein we think it is fairly established that the coco fiber pile mats in question are made in part of braid made on a braiding machine or by hand; that said braid was separately woven from the body of the mats, and that the mats and braid binding together are composed wholly or in chief value of yarns, filaments, or threads generally used for weaving purposes.

Appellant here contends that the plaited binding around the edges of the mats is not in fact a braid.

It appears from the testimony, and the samples before us, that all the mats involved in this appeal have a pile surface with a binding of braided material around the edges; that both the mats proper and the binding, hereinafter called braid, are made from coir yarn, and that the yarn is made from cocoa fibre, which fibre is also known as "coir;" that all of the braid used upon the involved mats was made upon a braiding machine with the exception of those mats designated "Granite #19," and that the braid used upon those mats was made by hand. Coir and coir yarn are recognized articles of commerce, being specifically provided for in paragraph 1656 of the Free List of said tariff act.

Funk & Wagnalls New Standard Dictionary defines the word "braid" as follows:

braid, n. 1. A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them. * * *

2. Anything braided, plaited, or interwoven, as a fillet, or plaited hair. * * *

We are convinced from the testimony in the record and an inspection of the samples in evidence that the binding upon the mats is braid within the common meaning of that term. While some of the witnesses for appellant expressed the opinion that the binding upon the edges was not braid, there is no proof in the record that

the term "braid" had in the trade and commerce of the United States a commercial meaning different from its common meaning.

We are therefore in accord with the holding of the trial court that the involved mats are made in part of braid, within the meaning of that word as used in paragraph 1529 (a). We likewise agree with the trial court that the mats and braid binding are composed wholly of yarns, filaments, or threads generally used for weaving purposes.

Upon this point one of appellant's witnesses testified as follows:

Judge Dallinger. What, in your experience, has coir yarn been used for?

The Witness. The only purpose I have seen it used for was for the purpose of tying on mats.

Judge Dallinger. Is it woven on a textile machine?

The Witness. It is woven on a special machine, and that machine is entirely different from anything that is commonly known to me as a textile loom. * * *

Being of the opinion that the involved mats are made in part of braid made by hand or on a braiding machine, and that the mats with their braid are composed wholly of filaments, yarns, or threads, it is obvious that the judgment appealed from must be affirmed unless the doctrine of long-continued administrative practice of classifying mats of the character here involved under paragraph 1022 and its predecessors in prior tariff acts is here applicable, as urged by appellant.

Upon this point the trial court in its decision stated:

Now, as to the doctrine of long-continued Departmental practice which the defendant seeks to invoke in support of the collector's classification of the merchandise as coco fiber pile mats under said paragraph 1022 of said act of 1930, it appears that Congress provided for "mats made of coco fiber" in the three prior Tariff Acts of 1922, 1913, and 1909, respectively, while the provision in paragraph 1022 of the present act is for "pile mats and floor coverings, wholly or in chief value of coco fiber." Furthermore the competing provision for articles in part of braid, etc., appeared only for the first time in paragraph 1430 of the Tariff Act of 1922, and was reenacted in substantially the same language in said paragraph 1529 (a) in the act of 1930. Under the circumstances it is quite apparent that the doctrine of long-continued Departmental or administrative practice can have little application in the present instance.

Much testimony was introduced by the Government upon this point, but we find it unnecessary to review the evidence relative thereto for the reason that, even though such administrative practice were established, we must hold that the doctrine is not applicable to the case at bar.

It is well established that this doctrine is applicable only where the construction of the statute is doubtful. *Pacific Creosoting Co.* v. *United States*, 1 Ct. Cust. Appls. 312, T. D. 31407; *Pittsburgh Plate Glass Co.* v. *United States*, 2 Ct. Cust. Appls. 389, T. D. 32162; *Lloyd Co.* v. *United States*, 9 Ct. Cust. Appls. 280, T. D. 38217; *United States* v. *Jules Raunheim (Inc.)*, 17 C. C. P. A. (Customs) 425, T. D. 43867; *Coty Processing Co., Inc.* v. *United States*, 23 C. C. P. A. (Customs)

117, T. D. 47768; *Rapken & Co., Ltd.* v. *United States,* 25 C. C. P. A. (Customs) 268, T. D. 49393.

In the case of *United States* v. *Raunheim, supra,* we said:

It is a familiar rule that long-established administrative practice is determinative only when the meaning of the statute is doubtful. *Pittsburgh Plate-Glass Co.* v. *United States,* 2 Ct. Cust. Appls. 389, T. D. 32162. The Supreme Court of the United States has expressly held that a similar statute, subject to the same construction, is not ambiguous or doubtful. *Frankenberg* v. *United States, supra; United States* v. *Citroen, supra.* Therefore, an administrative practice in plain violation of the terms of the statute can not be urged as determining the construction that should be given to it.

We find nothing doubtful in the construction of paragraph 1529 (a).

The provision for fabrics and articles composed in any part of braid, "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act * * *" first appeared in the Tariff Act of 1922, being paragraph 1430 thereof, the prototype of paragraph 1529 (a) of the Tariff Act of 1930. Certain paragraphs were excluded from the operation of these provisions, but paragraph 1023, embracing mats of cocoa fiber, was not excluded.

We had occasion to construe the provision "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act" in the case of *Blumenthal & Co.* v. *United States,* 14 Ct. Cust. Appls. 17, T. D. 41531, wherein we said, referring to paragraph 1430 of the Tariff Act of 1922:

* * * That paragraph provides that trimmings and ornaments *by whatever name known and to whatever use applied whether or not named, described or provided for elsewhere in the act,* shall be subjected to a duty of 90 per centum ad valorem. By that language Congress left no doubt as to its intention, and consequently, rules of construction or interpretation cannot be invoked to give to the statute a meaning other than that which its terms clearly and plainly import.

We have many times since that decision affirmed the holding above quoted.

Paragraph 1529 (a) contains the identical language—"by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act"—found in paragraph 1430 of the Tariff Act of 1922, construed in the case last above cited.

In the case of *United States* v. *Bullocks, Inc.,* 24 C. C. P. A. (Customs) 41, T. D. 48330, involving the application of the provisions of paragraph 1529 (a) of the Tariff Act of 1930, we said:

It was repeatedly held by this court in cases arising under the Tariff Act of 1922 that paragraph 1430 thereof, of which paragraph 1529 (a) of the Tariff Act of 1930 is, so far as here material, the same in effect, invaded all other parts of the act except such paragraphs as were specifically excepted. Articles in part of braid are expressly included in paragraph 1529 (a), "whether or not named,

described, or provided for elsewhere in this Act." It seems to us clear, therefore, that it was incumbent upon the importer to show not only that the merchandise involved was in chief value of silk, but also that it was not in part of braid. In view of the record, it was not sufficient simply to establish that it was not embroideries. Even if this be assumed to have been established and that the presumption that the articles are embroideries was overcome, the second part of appellant's burden, that of the correctness of its own claim, was not thereby established.

The conclusion follows from the foregoing that there can be no doubt respecting the construction of the provision of paragraph 1529 (a) respecting the phrase "by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act;" that by its terms the paragraph invades paragraph 1022 and removes therefrom cocoa fiber mats made in part of braid, and therefore the doctrine of long-continued administrative practice in classifying merchandise is not here applicable.

We will conclude with one further observation. Upon oral argument it was suggested that the President in his proclamation clearly intended to include therein cocoa fiber mats made in part of braid, and that by section 336 of said Tariff Act of 1930 he was empowered not only to change the rates of dutiable goods, but also to change the classification of such goods. There is nothing in the proclamation suggesting any change in classification of cocoa fiber mats, but the proclamation merely increases the rate of duty provided for in paragraph 1022. The President no doubt was empowered to carve out of the general provision of paragraph 1529 (a) a specific classification of cocoa fiber mats made in part of braid, and to increase the duty thereon to a maximum of 135 per centum ad valorem. This he did not do, and the clear provisions of paragraph 1529 (a) still invade paragraph 1022, which is the only paragraph affected by said proclamation.

For the reasons herein stated the judgment appealed from is *affirmed*.